FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 01, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDSAY N.[1], <br><br>  Plaintiff, <br><br>  v. <br><br> COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, <br><br>  Defendant. | No. 4:21-CV-05160-SAB <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Cross-Motions for Summary Judgment. ECF Nos. 13, 15. The motions were heard without oral argument. Plaintiff is represented by Chad L. Hatfield; Defendant is represented by Ryan Ta Lu and Brian M. Donovan.

Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision denying her application for Disability Income Benefits under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382. After reviewing the administrative

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 13, and grants Defendant's Motion for Summary Judgment, ECF No. 15.

### I.    Jurisdiction

On June 15, 2018, Plaintiff filed an application for disability income benefits, as well as supplemental security income, alleging an onset date of May 22, 2013. Plaintiff's application was denied initially and on reconsideration. On January 13, 2021, Plaintiff appeared and testified by telephone before ALJ Mark Kim, with the assistance of her counsel, Chad Hatfield. At the hearing, Plaintiff amended her onset date to May 2017. Mark Mann, vocational expert, also participated. The ALJ issued a decision on February 18, 2021, finding Plaintiff was not disabled.

Plaintiff requested review by the Appeals Council; the Appeals Council denied the request on October 25, 2021. The Appeals Council's denial of review makes the ALJ's decision the "final decision" of the Commissioner of Social Security, which this Court is permitted to review. 42 U.S.C. § 405(g), 1383(c)(1)(3).

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on December 28, 2021. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g).

### II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if their impairments are of such severity that the claimant is

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

not only unable to do their previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner has established a five-step sequential evaluation process to determine whether a person is disabled in the statute. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

**Step One**: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b), 416.920(b). If the claimant is not, the ALJ proceeds to step two.

**Step Two**: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. *Id.* § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairment is severe, the evaluation proceeds to the third step.

**Step Three**: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering to the fourth step, the ALJ must first determine the

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

claimant's residual functional capacity. An individual's residual functional capacity is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The residual functional capacity is relevant to both the fourth and fifth steps of the analysis.

**Step Four**: Does the impairment prevent the claimant from performing work they have performed in the past? 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to perform their previous work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

**Step Five**: Is the claimant able to perform other work in the national economy in view of their age, education, and work experience? 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id*.

### III. Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance," *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

A decision supported by substantial evidence will be set aside if the proper

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). It "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

## IV.  Statement of Facts

The facts have been presented in the administrative record, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized herein.

At the time of the hearing, Plaintiff was 43 years old. She was living with her mother and her 23-year-old son. Plaintiff earned her bachelor's degree and master's degree in child psychology. Plaintiff worked as a group home manager supporting individuals with development disabilities. She was fired from her last job when she was arrested for a DUI. At the time she was living in Portland. She was unable to find work, so she moved back to the Tri-Cities area.

Plaintiff started using methamphetamine and marijuana at the age of 17 and drank alcohol in excess starting when she was 26 years old. In 2013, Plaintiff was involved in a car accident and soon after she entered rehab. While there, she fell off a bunk bed and shattered her heel. Her foot failed to heal properly, and she continued to have pain due to the nonunion of her bones. Her bones failed to fuse

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 5

and ultimately, she had four surgeries. The last foot surgery that took place in 2018.

In January 2019, Plaintiff was involuntarily hospitalized because she had suicide ideation and severe anxiety. Just prior to this, Plaintiff had relapsed and began using methamphetamine. She had prior psychiatric hospitalizations in 2011 and 2012. Prior to her hospitalization in January 2019, Plaintiff was homeless.

In February 2019, Plaintiff had mild swelling throughout the foot and pain, but the doctor noted that the fusion was successful. It was also noted that Plaintiff had severe onychomycosis on all 10 toenails. She underwent successful procedures to remove all 10 toenails. In April 2019 Plaintiff reported that she was not having any pain in her right foot.

### V. The ALJ's Findings

The ALJ issued an opinion affirming denial of benefits. AR 20-33. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2017, the amended alleged onset date. AR 22.

At step two, the ALJ identified the following severe impairments: major depressive disorder; osteoarthritis of the right foot and ankle; bipolar affective disorder; and major depressive disorder. AR 23.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 24. Ultimately, the ALJ concluded that Plaintiff has a residual function capacity ("RFC") to perform:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for 2 hours total in an 8-hour workday; she can never crawl or climb ladders or scaffolds; she can occasionally balance, kneel, and crouch; she can less than occasionally climb flights of stairs; she must avoid extreme cold,

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 6

> excessive vibration, and unprotected heights; and she is limited to performing only simple, routine, unskilled tasks due to her physical and mental impairments.

AR 25.

At step four, the ALJ found that Plaintiff was not able to perform any past relevant work. AR 31.

At step five, the ALJ found that Plaintiff was not disabled and capable of performing work that exists in significant numbers in the national economy, such as photocopy machine operators, routing clerk, and office helper. AR 32.

## VI. Issues for Review

1. Whether the ALJ properly evaluated the medical opinion evidence?
2. Whether the ALJ properly conducted an adequate step three evaluation?
3. Whether the ALJ properly evaluated Plaintiff's symptom testimony?
4. Whether the ALJ properly conducted an adequate analysis at Step Five?

## VII. Discussion

What makes Plaintiff's case somewhat unique is that her physical impairments predominated at the onset of her disability and resolved in 2019, whereas her mental health impairments began to exacerbate starting in 2019 and continuing in 2020. Notably, Plaintiff was hospitalized for over three weeks after a psychotic break in January 2019.

**1. Whether the ALJ properly conducted an adequate step three evaluation?**

### A. Listing 1.02A

The ALJ concluded that the severity of Plaintiff's right foot/ankle impairment did not meet the listing of 1.02A. Specifically, the ALJ found her right foot/ankle impairment did not result in the "inability to ambulate effectively."

Listing 1.02 provides:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 101.00B2b;

### B. Listing 1.06

At the hearing before the ALJ, Plaintiff asserted that in addition to Listing 1.02A, she also met Listing 1.06.

Listing 1.06 provides:
1.06 Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:
    A. Solid union not evident on appropriate medically acceptable imaging, and not clinically solid; and
    B. Inability to ambulate effectively, as defined in 101.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

### C. Analysis

The ALJ did not address whether Plaintiff met Listing 1.06. Here, there is evidence in the record that Plaintiff experienced a non-union nonunion at the subtalar joint. However, the record does not support a finding that she was unable to return to effective ambulation within 12 months of onset.

In January 2016, she was walking in a boot and a crutch or cane to get around. A month later, she is not bearing any weight on her right foot and is using crutches and a wheelchair when she is at home. A month later, the pain has become unbearable, and she is using a boot and crutches. She reported that her ankle pain is worse with activity and better with rest and elevation and non-weightbearing.

In late March 2016, surgery to remove the hardware in her ankle was performed. Plaintiff was placed in a non-weightbearing cast. By April 2016, she was walking in a boot with crutches. In August 2016, she was seen, and her ankle

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 8

continued to be painful. It worsened with activity and was better with rest and elevation. On August 4, 2016, Plaintiff attended a counseling session, and it was noted that she was walking without a cane or any assistance.

Plaintiff had subtalar fusion surgery in late August 2016. Stimu-blast putty was used as a graft source since her bone had poor bone stock after the fracture and screw placement and subsequent removal. She was placed in a non-weightbearing cast. Two weeks later she was still in significant pain. Another two week and the doctors noted that it appeared there was a slight malunion of the calcaneus. There were some signs of healing, but it was not yet solid. She remained in a non-weight bearing cast. Two weeks later there was good alignment, but Plaintiff continued to be in pain.

In December 2016, Plaintiff returned for a recheck and she was still in a boot, on crutches, and in pain. The doctor noted that Plaintiff was 3.5 months out from subtalar fusion, but he was concerned about a nonunion based on her pain. Two week later she was seen and reported less pain but noted that the pain was better when she wore the boot, but it worsened when she went without it. There was no mention of the use of crutches. That said, the doctor concluded that Plaintiff did not achieve a solid fusion and it looked like she was going into a nonunion. In February 2017, she reported that she continued to have pain, but it is slowly getting better. She used crutches when she went outside of the house. In March 2017, Plaintiff reported that her pain was decreasing, but the exam showed that a persistent nonunion at the subtalar joint. Plaintiff was told to return in five months.

In October 2017 Plaintiff was seen and reported continued pain. The exam revealed that despite the use of the bone stimulator and adequate vitamin D, Plaintiff continued to have nonunion. Another surgery—a revision arthrodesis using iliac crest bone graft—was planned.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

In December 2017, she was seen. She reported that her pain was worse with walking. There was no mention of using crutches. Surgery was postponed in February 2018 because Plaintiff was homeless. In April 2018, Plaintiff was seen and reported continued pain. She was using a boot, but no mention of crutches. She was seen again in June 2018, having continued pain and using a boot, but again no mention of crutches. She had the surgery in July 2018 and she was in a non-weightbearing cast.

By December 2018, her doctor was recommending that she transition to regular shoes. In the end of January 2019, Plaintiff was six-month out from the revision right subtalar fusion, and she reported severe forefoot pain with some swelling in the toes. She was told to wear a walking boot. It was noted that she had onychomycosis on all ten toes. Plans were made to remove her toenails. That surgery took place on her right foot in April 2019 and on her left foot in June 2019. Both were successful. It appears that Plaintiff used a surgical sandal but there is no mention of crutches. In July 2019 she was diagnosed with a stress fracture in her left foot and was told to continue to wear the surgical sandal.

The onset date was amended because Plaintiff had prior work in 2015 and 2017 during the tax season. Notably, in February 2017, while she was reporting pain in her right ankle and using crutches to go outside, it appears she was working as a tax preparer. But, by May 2017, the onset date, there is no mention of using crutches until after she had her surgery in July 2018. She was on crutches from July 2018, but by December she was transitioning to regular shoes. Also, as set forth above, in January 2019, Plaintiff was hospitalized because she was having suicidal ideations. There was no mention in the extensive records that she was using crutches during this time.

The ALJ did not err in finding that Plaintiff did not meet Listing 1.02A because the record does not support a finding that Plaintiff has unable to ambulate effectively. For the same reasons, the ALJ did not err in failing to address whether

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

Plaintiff met Listing 1.06 because she was able to return to effective ambulation within a year.

Moreover, the record does not support a finding that Plaintiff meets any Listing regarding her mental impairments. As such, the ALJ did not err in finding that Plaintiff did not meet any Listings.

**2.    Whether the ALJ properly evaluated Plaintiff's physical impairments.**

For claims filed on or after March 27, 2017,[2] like the present claim, new regulations apply regarding the evaluation of medical evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); *see Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). The new regulations eliminate any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c. Specifically, the rules eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. 82 Fed. Reg. at 5853. In articulating the ALJ's consideration of medical opinions for persuasiveness, the ALJ  considers the following factors: (1) Supportability and (2) Consistency; (3) Relationship with the claimant, including (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extend of the treatment relationship; (v) examination relationship; (4) Specialization; and (5) Other factors, including whether the medical source has familiarity with the other evidence or an understanding of SSA's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The most

---

[2] For claims filed prior to March 27, 2017, an ALJ was to give more weight to "those physicians with the most significant clinical relationship with the plaintiff." *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

important factors in evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

> Supportability and consistency are further explained in the regulations:
>
> (1) *Supportability.*
>
> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.*
>
> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c); 416.920c(c).

When a medical source provides multiple medical opinions, the ALJ must articulate how it considered these opinions in a single analysis applying the above-listed factors. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). If equally persuasive medical opinions about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must articulate how it considered the other most persuasive factors in making its decision. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

The ALJ found Dr. Stevens's DSHS physical functional evaluation form dated April 2018, Dr. Reuben Grothaus's DSHS physical functional evaluation form also dated April 2018 and Dr. Myrna Palasi's DSHS review of medical evidence form dated April 2018, all of which concluded that Plaintiff was unable to perform even sedentary work to be not consistent with the record as a whole. The ALJ noted that Plaintiff was although Plaintiff had a history of right foot problems, she was able to ambulate independently prior to the surgery around July

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

2018. Moreover, her right foot condition improved after her surgery, which was only a few months after these opinions. The ALJ noted that Plaintiff reported in May 2019 that she did not have difficulty performing activities of daily living and her physical exams after her surgery typically showed a normal gait. In October 2019, she reported that she took her puppy on long walks.

The ALJ's evaluation of the evidence concerning Plaintiff's physical impairments is adequately supported and consistent with the record. As such, the ALJ's determination that Plaintiff is not disabled due to her physical impairments is supported by substantial evidence in the record. Plaintiff asserts that at the minimum, the record shows that she was disabled due to her right foot injuries at least from May 2017 to early 2019. However, the record adequately supports the ALJ's RFC determination that Plaintiff can stand and/or walk for 2 hours total in an 8-hour workday, which is consistent with her own testimony.

**3.    Whether the ALJ properly evaluated Plaintiff's mental impairments.**

With respect to Plaintiff's mental health symptoms, the ALJ found that they were largely stable and reasonably well managed during the period at issue. It noted that the records indicate that since the amended alleged onset date, Plaintiff's mental examinations have been fairly unremarkable, particularly in terms of Plaintiff's behavior, orientation, speech, thought process, thought content, cognition, insight and judgment. Plaintiff argues the ALJ erred in failing to address her hallucinations and memory loss.

The ALJ found Plaintiff's reports to her treating providers have generally not reflected her allegations of debilitating mental symptoms. The record suggests that Plaintiff's depression waxed and waned, but it appears her mood was affected by situational stressors, including housing difficulties, and family members who were using drugs. Notably, Plaintiff was seen by Dr. Michael Schrift for a neuropsychiatric evaluation of her memory complaints. He diagnosed mild

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

cognitive impairment, which he believed was likely due to side effects of her medication. He suggested Plaintiff talk to her providers about possibly changing her medication.

Dr. Marks evaluated Plaintiff in 2013, nearly four years before her alleged onset date. Dr. Melanie Mitchell performed a DSHS review of the medical evidence. They found that Plaintiff had moderate to marked mental limitations. The ALJ found these opinions to not be consistent with the record as a whole because the later medical records indicate that Plaintiff's mental symptoms have bene fairly well managed over the longitudinal period at issue, other than in January 2019 when Plaintiff relapsed on methamphetamine.

The ALJ's evaluation of the medical evidence is supported and consistent with the record. Contrary to Plaintiff's assertions, the ALJ considered her memory loss by considering the opinion of Dr. Schrift and limited Plaintiff to performing only simple, routine, unskilled tasks. With respect to her hallucinations, it appears her hallucinations wax and wane and are triggered by increased stress.[3] Notably, Plaintiff has reported these hallucinations for years, even prior to her alleged onset date, but they have not prevented her from prior employment. The record does not support a finding that Plaintiff would be unable to work due to her hallucinations.

**4. The ALJ's evaluation of Plaintiff's symptom testimony**

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin* 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (citation and quotation omitted). If the claimant satisfies the first step

---

[3]Plaintiff describes that at times, she hears people mumbling around her and she sees ghosts.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 14

of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear and convincing reasons for doing so." *Id*. (citation and quotation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id*. (citation and quotation omitted). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304. Daily activities may be grounds for an adverse credibility finding if (1) Plaintiff's activities contradict her other testimony, or (2) Plaintiff "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15

Here, the ALJ provided clear and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. The longitudinal records support the ALJ's conclusion that Plaintiff's reports to her treating providers have generally not reflected her allegations of debilitating mental symptoms.

### 5. Step Five Analysis

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and their decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ's RFC determination adequately accounts for Plaintiff's limitations. Even with the identified limitations, there are significant jobs in the economy for Plaintiff with her education and work experience to perform. As such, the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence in the record.

### VIII. Conclusion

Here, the ALJ's determination that Plaintiff was not disabled for the period in question is well-supported by substantial evidence in the record.

//

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

3. The decision of the Commissioner is affirmed.

4. Judgment shall be entered in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 1st day of November 2022.



Stanley A. Bastian
Chief United States District Judge

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17**